## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

JEFFREY J. FARNWORTH            :
      *Plaintiff*             :
                              :
V.                              :            **C.A. NO.:**
                              :
SEACORP, LLC,                   :
alias                           :            **Jury Trial Demanded**
      *Defendant*             :
                              :

### COMPLAINT

### I.      Introduction

This action is brought by the Plaintiff, Jeffrey J. Farnworth, against his former employer, Defendant SEACORP, LLC seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, litigation expenses, costs, and other equitable relief, arising out of Defendant's violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*., the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-1, *et seq*., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*., the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et seq*., the Rhode Island Civil Rights of People with Disabilities Act ("CRPD"), R.I. Gen. Laws § 42-87-1 *et seq*., and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq.*

### II.      Parties

1.      Plaintiff Jeffrey J. Farnworth ("Plaintiff") is a resident of the City of Fall River, County of Bristol, and Commonwealth of Massachusetts.

**Page 1 of 19**

2.      Defendant SEACORP, LLC ("Defendant") is a domestic limited liability company duly organized under the laws of the State of Rhode Island with a principal place of business located at 62 Johnny Cake Hill, Middletown, Rhode Island, 02842.

### III.      Jurisdiction

3.      The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the FMLA, ADA, and the ADEA.

4.      Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV.      Venue

5.      Venue is proper in this Court insofar as Defendant is doing business in Rhode Island and therefore is deemed to reside within the District of Rhode Island and a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred within the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.      Exhaustion of Administrative Remedies

6.      On or about December 1, 2023, Plaintiff co-filed a Charge of Discrimination with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC") against Defendant, alleging discrimination on the basis of his disability and age.

7.      Thereafter, more than one hundred and twenty (120) days but not more than two (2) years having elapsed since the filing of Plaintiff's Charge of Discrimination, Plaintiff requested a Notice of Right to Sue from the RICHR and the EEOC.

8.      Specifically, on or about January 13, 2025, Plaintiff requested a Notice of Right to Sue from the RICHR.

9.      On or about January 14, 2025, the RICHR issued Plaintiff a Notice of Right to Sue.

10.      On or about January 23, 2025, Plaintiff requested a Notice of Right to Sue from the EEOC.

11.      Accordingly, insofar as Plaintiff has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, Plaintiff has timely instituted suit in the within matter.

12.      There is no requirement under the FMLA, RIPFMLA and/or the RICRA relative to the exhaustion of administrative remedies.

## VI.    Material Facts

### *Factual Background*

13.      Defendant delivers engineering services and technology solutions to the United States maritime domain.

14.      Plaintiff was hired by Defendant on or about December of 2018 for the position of Assistant Facility Security Officer.

15.      As Assistant Facility Security Officer, Plaintiff's job duties included but were not limited to the following: assisting with clerical functions, processing incoming and outgoing visit authorization requests, tracking and processing long-term visitor building and network access, maintaining and securing the classified document library, monitoring the Security Post Office box for incoming classified materials, updating security databases, maintaining security files in compliance with regulatory requirements and company policies, and staying aware of compliance with company policies as defined in Defendant's handbook and government security policies.

16.      At all relevant times, Plaintiff was at least fifty-four (54) years of age, and thus, in a protected age group.

17.      At all relevant times, Plaintiff was one of the oldest employees in his department.

18.     Plaintiff is approximately twenty (20) years older than his direct supervisor, Jennifer Mosier ("Ms. Mosier").

19.     During Plaintiff's employment with Defendant, Plaintiff maintained a Top Secret/SCI 6/4 security clearance.  This is the highest level of security clearance granted to civilians, and a higher level than either of Plaintiff's direct supervisors while Plaintiff was employed by Defendant.

20.     At all relevant times, Plaintiff was a productive and high performing employee with work performance reviews that met or exceeded Defendant's expectations and without any history of purported work deficiencies.

21.     For instance, on or about September 2020, September 2021, and again in September 2022, Defendant awarded Plaintiff pay raises due to his excellent work performance.

22.     At all relevant times, Plaintiff suffered from various physical impairments that qualify as disabilities under the applicable law, including: (i) a hand injury suffered on or about the year 2022 resulting in the severing of nine (9) Flexor tendons and Median nerves in Plaintiff's left hand; (ii) neuropathy; (iii) a torn labrum; (iv) a detached bicep; and (v) diabetes.  These impairments Plaintiff suffered from are collectively referred to herein as Plaintiff's "Disability."

23.     At all relevant times, Defendant, by and through its agents, was aware that Plaintiff suffered and continued to suffer from his Disability during his employment with Defendant.

24.     On or about March 22, 2021, Plaintiff went on medical leave approved and designated by Defendant as FMLA leave in order for Plaintiff to undergo surgery to reattach the tendons in his left hand.

25.     Unfortunately, the nerve damage was irreparable, resulting in neuropathy in four (4) of the fingers in Plaintiff's left hand.

26.   Defendant and its agents were aware of Plaintiff's hand injury, surgery, and resulting neuropathy.

27.   Plaintiff requested that he be permitted to return to work full-time with the following restrictions as reasonable accommodations: no pushing, lifting, or gripping with the left extremity.

28.   On or about June 7, 2021, Plaintiff returned to work on a full-time basis with the above restrictions.

29.   These reasonable accommodations were in effect for the remainder of Plaintiff's employment with Defendant.

30.   On or about December 19, 2022, Plaintiff went on medical leave approved and designated by Defendant as FMLA leave due to his shoulder surgery resulting from a torn labrum and detached bicep causing Plaintiff severe pain  and that was exacerbated by Plaintiff's diabetes— all of which Defendant and its agents were aware of.

31.   At that point in time, Plaintiff had been a diabetic for approximately twenty-five (25) years and had managed his diabetes closely; however, the above-described "frozen shoulder" is common in diabetics and after almost two (2) years with no pain relief, surgery was necessary.

32.   On or about February 6, 2023, Plaintiff returned to work on a full-time basis with the following temporary restrictions requested as reasonable accommodations: light duty, no work at or above the shoulders, no lifting, pushing, or carrying more than three to five pounds, and no excessive typing without a break.

33.   These reasonable accommodations remained in effect for the remainder of Plaintiff's employment with Defendant.

34.   After Plaintiff returned to work, Ms. Mosier regularly mentioned the increased workload she took on during Plaintiff's approved medical leave as a result of his leave.

*Inadvertent Clerical Error, Discrimination, and Retaliation*

**Page 5 of 19**

35.     On or about February 16, 2023, Plaintiff made an inadvertent clerical error while completing his regular duties, which was caused by his Disability.

36.     The error occurred in a government system known as "DISS," which is used for requesting permission for Defendant-employees to visit secure government sites.

37.     Because of his above-discussed surgery to his left hand, Plaintiff's left hand had trouble using the keyboard and he inadvertently selected himself in the DISS drop-down selection menu and thereby requested a visit for himself instead of the correct Defendant-employee.

38.     Thus, Plaintiff notified Ms. Mosier immediately and asked her if he could recall the visit request.

*39.     Recalling the visit request could have been easily done because it resulted from an inadvertent clerical error.*

40.     Indeed, Plaintiff's non-disabled and significantly younger colleagues have told Plaintiff they recalled visits made in error without notifying a supervisor and without suffering any consequences over their error.

41.     Ms. Mosier did not allow Plaintiff to recall the visit request, stating that she would prefer to handle Plaintiff's inadvertent clerical error herself.

42.     Upon information and belief, Ms. Mosier refused to recall the visit request herself or allow Plaintiff to do so in order to use Plaintiff's inadvertent clerical error to lodge an incident report against Plaintiff in order to falsely justify a subsequent discipline action against Plaintiff because of Plaintiff's Disability, his age, and in retaliation over Plaintiff requesting reasonable accommodation in the form of medical leaves of absences and the restrictions identified above, and/or because she perceived Plaintiff or regarded Plaintiff as disabled, and thus damaged goods in light of the combination of Plaintiff's Disability and age.

43.    Plaintiff continued to work in the DISS program and carried out his job duties without any issue for the next approximate six (6) days.

44.    On or about February 22, 2023, Ms. Mosier emailed Plaintiff stating that Plaintiff's actions violated DISS Account Management Policy 5.8.  This policy, entitled "Misuse of DISS," prohibits "taking action on your own record."

45.    Ms. Mosier did not acknowledge in her email that Plaintiff had immediately explained that the visit request was an inadvertent clerical error and that he also immediately requested to recall the request.

46.    Approximately seven (7) days after the inadvertent clerical error, Ms. Mosier informed Plaintiff that she received communication from the Defense Counterintelligence and Security Agency ("DCSA") allegedly suggesting she suspend Plaintiff's access to DISS until the issue was resolved by the Department of Defense Consolidated Adjudication Services ("CAS"). She also informed Plaintiff that she recalled Plaintiff's inadvertent visit request and that CAS would purportedly investigate the inadvertent clerical error and apply any necessary penalty.

47.    To reiterate, *this investigation would not have been necessary if Ms. Mosier recalled the visit request as Plaintiff originally requested and that had been done by Plaintiff's non-disabled and significantly younger colleagues without repercussion.  Had the visit request been recalled when Plaintiff first requested it, Plaintiff would have continued his employment in the normal and usual manner.*

48.    On or about February 22, 2023, Defendant suspended Plaintiff's access to DISS.

### Discriminatory and Retaliatory Termination

49.    During Plaintiff's employment with Defendant, Kevin Borges ("Mr. Borges") served as Defendant's Chief Information Officer.  At all relevant times, Mr. Borges supervised both Ms. Mosier and Plaintiff.

**Page 7 of 19**

50. On or about March 1, 2023, Ms. Mosier conducted the weekly security meeting in Mr. Borges's office, which Plaintiff and Mr. Borges also attended.

51. However, the meeting did not proceed as usual and Ms. Mosier began the meeting by reading the DISS rule that Plaintiff had purportedly violated and explained that she would let the investigative process "play out."

52. During this meeting, Mr. Borges informed Plaintiff that Ms. Mosier and Defendant's Corporate Facility Security Officer, Barbara Bellagamba ("Ms. Bellagamba"), would handle all work involving DISS while CAS completed its investigation into Plaintiff's inadvertent clerical error.

53. Ms. Mosier told Plaintiff that Plaintiff would have enough work to "keep [Plaintiff] busy" during the investigation. She also repeated her displeasure that Plaintiff had taken medical leave by again stating how busy she was during Plaintiff's most recent medical leave due to his leave.

54. The meeting ended without addressing any other business.

55. On or about March 8, 2023, another security meeting was held in Mr. Borges's office, during which Ms. Mosier stated she would be posting Plaintiff's job on April 1, 2023 if the CAS investigation remained incomplete. She cited an alleged increase of security-related projects and the recent resignation of an Information Security Systems Officer as the reasons for this decision.

56. The above-identified resigning employee did not share any of the same employment duties as Plaintiff, but Plaintiff had assisted them with data entry on some special projects.

57. Ms. Mosier explained that the resignation was allegedly causing Ms. Bellagamba's and her workloads to increase so they could no longer cover Plaintiff's DISS-related work while the CAS investigation was ongoing.

58.     The speed of the alleged investigation was not in Plaintiff's control.

59.     Plaintiff expressed to Ms. Mosier his dissatisfaction with Defendant's decision to post his job.

60.     After expressing his dissatisfaction with the decision, Ms. Mosier *__again__* repeated how Plaintiff's approved medical leave increased her workload, stating that since she removed Plaintiff from the DISS project she could not "handle" the amount of visit requests.

61.     Ms. Mosier's repeated statements strongly implied that Plaintiff's approved medical leave was one of the actual reasons for Plaintiff's termination.

62.     On or about March 13, 2023, Plaintiff met with Defendant's Human Resource Manager, John Laurent ("Mr. Laurent"), to discuss Ms. Mosier's decision.

63.     Plaintiff is approximately fifteen (15) years older than Mr. Laurent.

64.     Mr. Laurent decided that if there is no decision from CAS beforehand then it would be fair for Defendant to post Plaintiff's job on April 15, 2023.

65.     He confirmed this decision to Mr. Borges, Ms. Mosier, and Plaintiff in an email.

66.     On or about March 14, 2023, Plaintiff emailed Defendant's DCSA representative, Keith Morin ("Mr. Morin") asking for the status of the CAS investigation.

67.     Plaintiff made this communication as a private citizen, not as an agent of Defendant.

68.     Plaintiff sent the email from his private email account on his own personal time.

69.     Mr. Morin contacted Ms. Mosier on or about March 15, 2023, asking for information regarding Plaintiff's email to DCSA.

70.     On information and belief, this revelation upset Ms. Mosier because she viewed Plaintiff's communication to Mr. Morin as a form of whistleblowing.

71.     On or about March 16, 2023, Jenny Patridge ("Ms. Patridge"), Defendant's Human Resources supervisor, approached Plaintiff in his office and escorted Plaintiff to a meeting.

**Page 9 of 19**

72. Plaintiff is approximately twenty-five (25) years older than Ms. Patridge.

73. The meeting began with Ms. Patridge accusing Plaintiff of emailing Ms. Morin and ended with Ms. Patridge informing Plaintiff that Defendant had not yet decided whether Plaintiff's job would be posted on April 1, 2023, April 15, 2023, or if Plaintiff will be terminated.

74. At approximately 2:45 p.m. that same day, Mr. Borges and Ms. Patridge approached Plaintiff and informed Plaintiff that he was being terminated for violating DISS Technology Policy 7.05.

75. DISS Technology Policy 7.05 is a policy that did not exist at the time of Plaintiff's termination.

76. Mr. Borges read from an index card when he informed Plaintiff of his termination and the reason therefor.

77. Defendant never provided Plaintiff with written documentation explaining the reason for his termination.

78. Notably, in addition to being purportedly terminated for a policy that did not exist, Plaintiff was terminated contrary to Defendant's own Progressive Discipline policy calling for a verbal warning, written warning, final notice, and suspension prior to termination—none of which occurred prior to Plaintiff's termination.

79. Per Defendant's Progressive Discipline policy, these intermediary steps of discipline prior to termination are supposed to be documented and stored in the employee's permanent personnel file. Again, this did not occur with respect to Plaintiff's termination.

80. Furthermore, the policy states that termination may occur where "the employee's misconduct is of such a serious nature."

81. However, at no point in time during Plaintiff's employment with Defendant did Plaintiff engage in "misconduct" of a "serious nature."

**Page 10 of 19**

82.     Lastly, the policy states that termination decisions are "made with the full review and approval of the Vice President and the Human Resources Manager."

83.     Here, Plaintiff's termination was never approved by Defendant's Vice President.

84.     The Department of Defense never concluded that Plaintiff had engaged in any wrongful action.

85.     Plaintiff was fifty-eight (58) years of age when Defendant terminated his employment.

86.     Following Plaintiff's termination, an individual significantly younger than Plaintiff was retained by Defendant to fill the position Plaintiff held.

87.     Upon information and belief, the individual who assumed Plaintiff's job duties following his termination is over twenty (20) years younger than Plaintiff.

### VII.    Violation of the FMLA and RIPFMLA

88.     Defendant's termination of Plaintiff's employment shortly after he took FMLA/RIPFMLA medical leave gives rise to a *prima facie* case of unlawful interference and discrimination against Plaintiff for exercising his rights under the FMLA and RIPFMLA.

89.     Furthermore, Defendant terminated Plaintiff's employment because Plaintiff took FMLA/RIPFMLA medical leave, which gives rise to a *prima facie* case of unlawful retaliation against Plaintiff for exercising his rights under the FMLA and RIPFMLA.

### VIII.    Disability Discrimination in Violation of the ADA, CRPD, FEPA, and RICRA

#### *Protected Impairment*

90.     At all relevant times, Plaintiff suffered from his Disability and his Disability constitute one or more disabilities as that term is defined and applied under the ADA, FEPA, CRPD, and/or RICRA.

91.     At all relevant times, Defendant was aware of Plaintiff's Disability.

92.     At all relevant times, Plaintiff's Disability constituted a physical impairment that substantially limited one or more of Plaintiff's major life activities.

93.     At all relevant times, Defendant had a record of such impairment.

94.     At all relevant times, Defendant regarded and/or perceived Plaintiff as having such an impairment.

### *Qualified Individual*

95.     At all relevant times, including both before and after his medical leaves, Plaintiff was able to perform his regular job duties, which clearly establishes his ability to perform the "essential" tasks required of his job "with or without reasonable accommodation."

96.     Accordingly, at all relevant times, Plaintiff was a qualified individual or otherwise qualified, as those terms are defined under the ADA, FEPA, CRPD, and/or RICRA.

### *Adverse Employment Action on Account of Plaintiff's Disability*

97.     Plaintiff began experiencing adverse employment action at the hands of Defendant almost immediately after he informed Defendant of his Disability and his need for reasonable accommodation in the form of medical leave and work-related restrictions.

98.     Defendant treated Plaintiff differently from other similarly situated non-disabled employees and/or employees younger than Plaintiff, including, but not limited to, by refusing to take any adverse action against them for engaging in the same or similar conduct Plaintiff engaged in.

99.      For the reasons described herein, Defendant took adverse action against Plaintiff, namely, terminating Plaintiff's employment because of his Disability, Defendant's record of Plaintiff's Disability, and/or because Defendant regarded Plaintiff as having a disability.

### *Failure to Provide Reasonable Accommodation/Engage in an Interactive Dialogue*

100.    At all relevant times, Defendant was aware that Plaintiff had a need for reasonable accommodation in the form of reasonable job restrictions following his medical leave as set forth above.

101.    Specifically, when Plaintiff made an inadvertent clerical error on or about February 16, 2023 as described above, Defendant knew of Plaintiff's Disability and his need for reasonable accommodation.

102.    However, Defendant failed or refused to engage in a dialogue with Plaintiff relative to the necessity and nature of any reasonable accommodation Plaintiff required in order to minimize the likelihood of Plaintiff committing the same inadvertent clerical mistake again.

103.    Instead, Defendant abruptly terminated Plaintiff's employment.

104.    Defendant's failure or refusal to provide Plaintiff with a reasonable accommodation and/or to engage in a dialogue relative to the necessity and nature of any reasonable accommodation Plaintiff required qualifies as prohibited disability discrimination.

### *Disability Discrimination and Retaliation*

105.    Pursuant to the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA.]" 42 U.S.C. § 12203(a).

106.    Pursuant to the ADA, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

107.    Pursuant to the FEPA, it is unlawful "[f]or any employer…to discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter …" R.I. Gen. Laws § 28-5-7(5).

108.    Pursuant to the FEPA, it is unlawful "[f]or any person, whether or not an employer, … to aid, abet, incite, compel, or coerce the doing of any act declared by [the FEPA] to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of [the FEPA]…, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice; …" R.I. Gen. Laws § 28-5-7(6).

109.    Defendant retaliated and discriminated against Plaintiff on the basis of his Disability and for requesting reasonable accommodations as described above.

110.    Defendant interfered with Plaintiff's rights under the ADA and FEPA as described above.

111.     Defendant unlawfully intimidated or threatened Plaintiff in violation of the ADA and FEPA as described above.

112.    Defendant aided, abetted, incited, compelled, or coerced acts in violation of the ADA and/or FEPA as described above.

113.    Defendant obstructed or prevented compliance with the provisions of the FEPA as set forth herein.

## IX. Age Discrimination

114.     As explained herein, at all relevant times, Plaintiff was at least forty (40) years of age; Plaintiff's work performance was sufficient to meet Defendant's expectations; Defendant took adverse action against Plaintiff by terminating his employment; and an individual significantly younger than Plaintiff was retained in the same position upon Plaintiff's termination.

115.    Plaintiff is older than his superiors, Ms. Mosier, Ms. Patridge, and Mr. Laurent, and was one of the oldest employees in his department.

116.   On information and belief and as explained above, Defendant took adverse actions against Plaintiff based on stereotyped assumptions arising out of Plaintiff's age – Plaintiff was an older worker who needed medical leaves of absences.

## X.   Pretext and Discriminatory Animus

117.   Defendant's intent to discriminate against Plaintiff on account of his Disability, perceived and/or recorded impairments, and/or age is further established, in part, by conduct evidencing that Defendant's purported reasons for terminating his employment were pretextual and that unlawful discrimination and retaliation motivated its decision to terminate his employment, including, but not limited to: a) failure to follow its own policies and procedures; b) inexplicable deviation from its normal practices and procedures; d) asserting false justifications for Plaintiff's termination; e) treating Plaintiff differently than other similarly situated employees; and, f) asserting implausible, inconsistent, and contradictory justifications for Plaintiff's termination, including, but not limited to, terminating Plaintiff over a policy that does not exist.

118.   Additionally, the temporal proximity of adverse employment action against Plaintiff in relation to his requests for FMLA/RIPFMLA leave and other reasonable accommodations supports an inference of discriminatory intent.

### *Motivation and Harm*

119.   Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to those described herein, are in violation of the FMLA, RIPFMLA, ADA, ADEA, FEPA, CRPD, and/or RICRA and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

120.   As a proximate result of Defendant's wrongful and/or unlawful discriminatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury, including, but not limited to, pecuniary losses, loss of income, loss of benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to his professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## XI.  Causes of Action

121.   Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 120 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

### Count One
### Family and Medical Leave Act
### 29 U.S.C. § 2601, *et seq.*
### *Interference, Discrimination, and Retaliation*

122.   Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the FMLA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the FMLA.

### Count Two
### Rhode Island Parental and Family Medical Leave Act
### R.I. Gen. Laws § 28-48-1, *et seq.*
### *Interference, Discrimination, and Retaliation*

123.   Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the RIPFMLA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RIPFMLA.

### Count Three
### Americans with Disabilities Act
### 42 U.S.C. § 12101, *et seq.*
### *Discrimination, Failure to Accommodate, and Retaliation/Interference*

124.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his Disability and violated Plaintiff's statutory rights in violation of the ADA, and thereby deprived him of rights secured under the ADA, causing him to suffer damages as aforesaid.

**Count Four**
**Age Discrimination in Employment Act**
**29 U.S.C.A. § 621, et seq.**
*Discrimination*

125.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his age and violated Plaintiff's statutory rights in violation of the ADEA, and thereby deprived him of rights secured under the ADEA, causing him to suffer damages as aforesaid.

**Count Five**
**Rhode Island Fair Employment Practices Act**
**R.I. Gen. Laws § 28-5-1, *et seq.***
*Discrimination and Retaliation/Interference*

126.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his Disability and age and violated Plaintiff's statutory rights in violation of the FEPA, and thereby deprived him of rights secured under the FEPA, causing him to suffer damages as aforesaid.

**Count Six**
**Civil Rights of People with Disabilities Act**
**R.I. Gen. Laws § 42-87-1, *et seq.***
*Discrimination and Retaliation/Interference*

127.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his Disability and violated Plaintiff's statutory rights in violation of the CRPD, and thereby deprived him of rights secured under the CRPD, causing him to suffer damages as aforesaid.

**Page 17 of 19**

**<u>Count Seven</u>**
**Rhode Island Civil Rights Act of 1990**
**R.I. Gen. Laws § 42-112-1, *et seq.***
***Discrimination and Retaliation/Interference***

128.    Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of Plaintiff's Disability and age, and thereby wrongfully interfered with Plaintiff's employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

**XII.    <u>Prayers for Relief</u>**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1.    A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the FMLA, RIPFMLA, ADA, ADEA, FEPA, CRPD, and/or RICRA.

2.    An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3.    An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, other compensation and/or benefits, and to make him whole for all earnings and benefits he would have received but for Defendant's unlawful conduct.

4.    An award of compensatory damages.

5.    An award of liquidated damages.

6.    An award of punitive damages.

7.    An award of prejudgment interest, reasonable attorneys' fees, and costs.

**Page 18 of 19**

8. Such other and further relief as this Court deems just and proper.

## XIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## XIV. Designation of Trial Counsel

Plaintiff hereby designates Joshua D. Xavier, Esquire, as trial counsel.

        Plaintiff,
        By his attorneys,
        **SINAPI LAW ASSOCIATES, LTD.**

**Dated:  February 6, 2025**    **/s/ Joshua D. Xavier, Esq.**
        **Joshua D. Xavier, Esq. (#9456)**
        **Danilo A. Borgas, Esq. (#9403)**
        2374 Post Road, Suite 201
        Warwick, RI 02886
        Phone:  (401)739-9690
        FAX:   (401) 739-9040
        Email:  jdx@sinapilaw.com
        Email:  dab@sinapilaw.com